COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Frank and Clements
Argued at Richmond, Virginia


ROBERT B. GREEN, SR.
                                             OPINION BY
v.   Record No. 2787-00-2          JUDGE JAMES W. BENTON, JR.
                                             JUNE 26, 2001
RICHMOND DEPARTMENT OF SOCIAL SERVICES

              FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                        Randall G. Johnson, Judge

              Robert W. Carll for appellant.

              Kate O'Leary, Assistant City Attorney
              (William Macdonald, guardian ad litem for the
              minor child, on brief), for appellee.


     The trial judge denied Robert B. Green, Sr., access to his

daughter's medical, hospital, and other records pursuant to Code

§ 20-124.6.  On appeal, Green argues that the trial judge erred in

finding that the Richmond Department of Social Services

established good cause to deny him access to his daughter's

records.  We affirm the judgment.

                                I.

     Green has been incarcerated in prison since 1995 and is

serving an eighteen-year sentence for several convictions,

including marital sexual assault.  Green's daughter was born in

1984 and has been in the custody of the Department since August

1998, pursuant to a court order relieving her mother of custody.

Prior to entry of the order transferring custody of Green's

daughter to the Department, Green's daughter had severe conflicts with her mother, used drugs, affiliated with gangs, and exhibited a number of other behavioral difficulties.  Since August 1998, she has lived in six homes or treatment facilities, including a foster home, a group home, a treatment center for children, and several hospitals and treatment facilities.  The evidence proved that the daughter's "oppositionally defiant" attitude and physical aggression toward staff and peers were the primary reasons for most of her transfers to different treatment facilities.  She has been participating in various counseling programs while in the Department's custody.

Green, who testified that he will be eligible for parole in 2004, first requested copies of his daughter's records in July 1999.  Although a foster care worker sent Green a consent form, Green did not receive any records because of errors on the consent form.  In December 1999, when Green again requested access to his daughter's records, the Department filed a motion in the Juvenile and Domestic Relations District Court opposing his request.  A judge found good cause to deny Green access to his daughter's medical, hospital, and other health records, except to the extent authorized by his daughter's treating physician.  Green appealed that decision to the circuit court.

At the evidentiary hearing in the circuit court, William Seay, the daughter's foster care worker, testified that the daughter was then in a residential treatment unit that specializes

-

in providing serious psychiatric treatment for adolescent females. Seay testified that the daughter's behavioral problems include physical aggression, defiance to adult authority, mood swings, and combativeness toward others. Seay also testified that various psychiatric evaluations attributed her aggressive and self-destructive behavior to past domestic violence in her family.

Kimberly Boone, the daughter's therapist, testified that the daughter has bipolar disorder, post-traumatic stress disorder, and conduct disorder. Her treatment includes medication for mood stabilization and participation in group and individual psychotherapy. Boone also testified that the daughter needs help resolving past abuse issues, was "starting to trust [Boone] and open up more and more," and has made advances in controlling her anger. Boone further testified that the daughter extensively discusses her relationship with Green in her therapy sessions and that, in Boone's opinion, the daughter's relationship with Green was "abusive." Boone testified, however, that Green's past physical abuse had been directed toward the daughter's mother. Although Boone admitted she had not discussed this issue with the daughter, Boone opined that Green's access to his daughter's records would impair the daughter's therapy because it would affect her trust in Boone. She believed the daughter would "probably always be worried" that her father would learn from her records what she discussed in therapy.

-

The daughter's guardian ad litem represented to the trial judge that the daughter believed Green's access to her records would violate her privacy and did not wish for Green to have access to her records. The guardian ad litem also said the daughter "had a lot of difficulties" relating to her mother and father and that she is "trying to work through these issues." In addition, the record contains a letter from the daughter's psychiatrist stating, "it is of the utmost importance that [the daughter] has no contact with her family . . . as this may be quite counterproductive at this time." A treatment plan signed by the daughter's psychiatrist reports that Green "would tell [the daughter] how he was going to physically and sexually abuse the mother and would make her watch." The plan also notes that Green is "not allowed any contact with [the daughter]."

Green testified he had exchanged written correspondence with his daughter "almost every week" from the time he was imprisoned in 1995 until February 5, 2000, when the correspondence stopped. Green also testified that his daughter wrote him about events that occurred in her life after she was placed in foster care. Green's reasons for wanting access to his daughter's records include the following:

> [He] wanted to access the records in order
> to better participate in [her] well being
> [and] . . . to understand what she was going
> through, what her needs were, and . . . to
> explain some things to her, as far as how
> her family was, what we were really going
> through . . . as a dysfunctional family.

-

                    *      *      *      *      *      *      *

     To make an assessment of all that she has
gone through because all the things that she
explained to me that had occurred to her
since we had separated.  You know I wanted
to see if she was getting counseling about
that.  What was being handled the best way,
you know, was she being truthful with me,
you know, what I could do to investigate.

Green testified that he wanted to take an active role in

facilitating his daughter's treatment.

    The trial judge found that Green's access to his daughter's

records would be harmful to her and was not in her best

interests.  He also found that Green's access to the records

would interfere with his daughter's disclosures to her therapist

and that Green's desire for access was "not to help [the

daughter]."  Upon these findings, the judge denied Green access

to her medical, hospital, and other health records.

                                   II.

    Code § 20-124.6 provides that, "[n]otwithstanding any other

provision of law, neither parent, regardless of whether such

parent has custody, shall be denied access to the academic,

medical, hospital or other health records of that parent's minor

child unless otherwise ordered by the court for good cause

shown."  Applying former Code § 20-107.2, which contained

protections similar to this statute, we have held as follows:

    "The trial court's decision, when based
upon an <u>ore</u> <u>tenus</u> hearing, is entitled to
great weight and will not be disturbed
unless plainly wrong or without evidence to

                                    -

> support it."  "Certainly it is true that the
> legal rights of the parent should be
> respected . . . but the welfare of the child
> is to be regarded more highly than the
> technical legal rights of the parent."

L.C.S. v. S.A.S., 19 Va. App. 709, 724, 453 S.E.2d 580, 588 (1995) (citations omitted).

Green contends the trial judge impermissibly relied only on Boone's opinion testimony that Green's access to the records would affect his daughter's trust in Boone as her therapist.  He also argues that Boone's testimony did not support the trial judge's finding of good cause.  We disagree.

In L.C.S., we affirmed a trial judge's decision to deny a father access to his child's medical records where the child believed that "'he was sexually abused and hurt by his father,'" and was frightened that his father might later harm him.  19 Va. App. at 723, 453 S.E.2d at 588.  In that case, the trial judge relied on the testimony of the child's therapist, who testified that "disclosure of the child's psychological records would adversely affect [the child's] recovery because [the therapist] would feel compelled to tell him of the required disclosure." Id. at 724, 453 S.E.2d at 588.

Boone's testimony, which the trial judge found persuasive, provided a substantial basis to support the finding that Green's access to the records would impair treatment of his daughter. In addition to Boone's testimony, however, the record in this case "is replete with evidence of 'good cause.'"  Id.  The

-

daughter's guardian ad litem represented to the trial judge that the daughter, a sixteen year old, was trying to resolve difficult issues regarding her relationship with her parents and viewed Green's access to her medical files as an invasion of her privacy. Although the daughter's wishes are not controlling, the trial judge properly gave weight to them because she had reached the age of discretion. See Hall v. Hall, 210 Va. 668, 672, 173 S.E.2d 865, 868 (1970) (noting that the wishes of children 13, 12, and 11 years of age are to be considered in a child custody case). Furthermore, the record contains evidence that the daughter suffers from psychological disorders as a result of her exposure to past domestic abuse in her family. The record proved that the daughter had not communicated with Green since February 5, 2000, and that the juvenile court judge had entered an order limiting the daughter's contact with both parents upon the recommendation of the daughter's treating professionals.

As the trial judge ruled, no evidence proved that Green has any specialized training or education in child development or counseling that would provide him with the ability to help his daughter by reviewing her medical records. In other words, nothing in the record showed that Green has greater insight than his daughter's therapist concerning what is in her best interest as she undergoes treatment. The testimony of the therapist and the report of the psychiatrist are unrebutted by any evidence

-

explaining how Green's daughter, who needs psychological treatment, would benefit or progress in resolving her psychological issues if Green had access to her medical records.

In his ruling, the trial judge specifically and permissibly relied on both the past histories of Green and his daughter and on the opinion of the expert witness in determining what is in the best interest of Green's daughter. See Hughes v. Gentry, 18 Va. App. 318, 325, 443 S.E.2d 448, 452 (1994). The trial judge was well suited to ascertain the expert witness' credibility, to determine the weight to be given to her testimony, and to exercise discretion in accepting or rejecting the witness' testimony. Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 668 (1997) (en banc). Based on our review of this record, we hold that the trial judge did not err in finding good cause to deny Green access to his daughter's medical, hospital and other health records pursuant to Code § 20-124.6. Accordingly, we affirm the judgment.

Affirmed.